**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated, | : | CIVIL ACTION FILE NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT – CLASS ACTION** |
| | : | |
| CARGUARD ADMINISTRATION, INC., and AUTO PROTECHT LLC, | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendants. | : | |
| | : | |
| _____/ | | |

Plaintiff George Moore (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.       As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.       This case involves a campaign by Auto Protecht LLC ("Auto Protecht"), a telemarketer retained by CarGuard Administration, Inc. ("CarGuard") to market CarGuard's

services through the use of a telemarketing campaign to promote CarGuard's services despite not having the requisite consent to contact those individuals.

3.      Because telemarketing campaigns use technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

4.      A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

5.      Plaintiff George Moore is an individual citizen and resident of this District.

6.      Defendant CarGuard Administration, Inc. is a Kansas corporation. CarGuard is registered to do business in the State of Illinois and has a registered agent of Incorp Services, Inc., 901 S. 2nd St., Suite 201, Springfield, IL 62704.

7.      Defendant Auto Protecht LLC is a California limited liability company with a registered agent of Robby Birnbaum, 100 West Cypress Creek Rd., Suite 700 in Fort Lauderdale, FL 33309.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9.      This Court has personal specific jurisdiction over CarGuard because it services the contracts offered on the calls by Auto Protecht, including on the calls to the Plaintiff.

10.     Auto Protecht is subject to specific personal jurisdiction because it made telemarketing calls to the Plaintiff by directing their conduct into this District.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the Plaintiff is a resident of this District, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

## TCPA BACKGROUND

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

13.     § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

3

## FACTUAL ALLEGATIONS

17.     Defendant CarGuard is a "person" as the term is defined by 47 U.S.C. § 153(39).

18.     Defendant Auto Protecht is a "person" as the term is defined by 47 U.S.C. § 153(39).

19.     At no point has the Plaintiff sought out or solicited information regarding Defendant CarGuard's services prior to receiving the telemarketing calls at issue.

Calls to Plaintiff

20.     Plaintiff Moore's telephone number, 630-XXX-3200, is a residential telephone line.

21.     It is not associated with a business and is used by Mr. Moore only.

22.     The telephone number has been on the National Do Not Call Registry since March 26, 2006.

23.     Plaintiff Moore received several telemarketing calls from "auto protection department", including on October 22, 23 and December 4, 2020.

24.     Mr. Moore answered the calls and was not interested in the services being offered.

25.     However, the calls continued.

26.     Mr. Moore received calls from the same "auto protection department" on February 2 and 17, 2021.

27.     Finally, on the February 17, 2021 call, Mr. Moore engaged the telemarketer so they would sufficiently identify themselves.

28.     During the call, the telemarketer revealed the name of their company to be "CarGuard".

29.     The telemarketer stated that they were offering discounted vehicle extended warranties.

30.     Mr. Moore then spoke with "Richard Johnson" who finalized the telemarketing pitch for CarGuard.

31.     However, when Mr. Moore received documentation regarding the telemarketing call, it was revealed that "Auto Protecht" was the entity that had made the call for CarGuard and their company information was provided with the documentation.

32.     The calls received by Plaintiff were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they seek to have him sign up for CarGuard's services.

33.     This was confirmed by the fact that, during the calls, CarGuard's vehicle warranty services were promoted.

34.     These calls therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

35.     Plaintiff and all members of the classes defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance.  The calls also occupied Plaintiff's telephone line from legitimate communication.

36.     Plaintiff has not provided Defendants with his prior express written consent to place telemarketing calls to him.

## CARGUARD'S LIABILITY FOR THE CALLS AT ISSUE

37.     For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."

5

*In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum

Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

38.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a

corporation or other entity that contracts out its telephone marketing "may be held vicariously

liable under federal common law principles of agency for violations of either section 227(b) or

section 227(c) that are committed by third-party telemarketers."[1]

39.     In that ruling, the FCC instructed that sellers such as CarGuard may not avoid

liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave consumers in many cases
> without an effective remedy for telemarketing intrusions. This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> the United States, as is often the case. Even where third-party telemarketers are
> identifiable, solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases substantially
> more expensive and less efficient, since consumers (or law enforcement agencies)
> would be required to sue each marketer separately in order to obtain effective relief.
> As the FTC noted, because "[s]ellers may have thousands of 'independent'
> marketers, suing one or a few of them is unlikely to make a substantive difference
> for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

40.     The May 2013 FCC Ruling held that, even absent evidence of a formal

contractual relationship between the seller and the telemarketer, a seller is liable for

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.

28 FCC Rcd at 6586 (¶ 34).

---

[1]      *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling
Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

41.     Auto Protecht was contractually required to promote CarGuard products in its telemarketing calls in order to potentially generate new customers, and did so, as it did with the Plaintiff.

42.     In fact, CarGuard continued its relationship with Auto Protecht despite receiving complaints related to Auto Protecht's conduct.

43.     Moreover, CarGuard admits that it can't help the called consumer until the consumer finds out the name of the company CarGuard is working with:

> We do not engage in any marketing directly to consumers of any type. Unfortunately, without the identity of the seller there is no way for us to suspend calls. If the customer can let us know who the seller is, we can e-mail them and ask them to stop calling this customer. If the customer can provide us the name of seller, please e-mail it to ****************, and we will contact the seller and ask them to stop calling this customer.

*See* https://www.bbb.org/us/ks/leawood/profile/auto-service-contract-companies/carguard-administration-inc-0674-1000006173/customer-reviews (Last Visited February 20, 2021).

44.     CarGuard was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of vehicle service contracts.

45.     CarGuard derived a benefit from its interaction with the Plaintiff by the issuance of a policy.

46.     Moreover, CarGuard maintained interim control over Auto Protecht's actions.

47.     For example, CarGuard had absolute control over whether, and under what circumstances, it would accept a customer.

48.     CarGuard gave further interim instructions to Auto Protecht by providing the states that those companies were allowed to make calls into and restricting other states that they could not.

49.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

50.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

51.     Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

52.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Auto Protecht National Do Not Call Registry Class**: All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of Auto Protecht, (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

> > **CarGuard National Do Not Call Registry Subclass:** All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of Auto Protecht (3) within a 12-month period, (4) that promoted CarGuard services (5) from four years prior the filing of the Complaint.

Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

53. The Plaintiff is a member of and will fairly and adequately represent and protect the interests of these Classes as he has no interests that conflict with any of the Class members.

54. Plaintiff and all members of the Classes have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy.

55. This Class Action Complaint seeks injunctive relief and money damages.

56. The Classes as defined above are identifiable through dialer records, other phone records, and phone number databases.

57. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each Class.

58. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

59. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

60. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the claims predominate over questions which may affect individual class members because of the uniformity of the telemarketing conduct.

61. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

> (a) whether multiple telemarketing telephone calls were made promoting the goods or services to members of the National Do Not Call Registry Classes;
>
> (b) whether the telemarketing calls at issue were made to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;
>
> (c) whether Defendants' conduct constitutes a violation of the TCPA; and

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

62.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has no interests which are antagonistic to any member of the Classes.

63.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

64.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

65.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.


**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(c))**
**on behalf of the National Do Not Call Registry Classes**

66.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

67.     Defendants violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing calls within a 12-month period on Defendants' behalf to

Plaintiff and the members of the National Do Not Call Registry Classes while those persons' phone numbers were registered on the National Do Not Call Registry.

68.     As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

69.     Plaintiff and Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

70.     Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the Defendants from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     Injunctive relief prohibiting Defendants from making telephone calls advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future;

B.     As a result of Defendants' negligent, willful and/or knowing violations of 47 C.F.R. § 64.1200(c), Plaintiff seek for himself and each member of the Classes up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is

a proper representative of the Classes, and appointing the lawyers and law firms representing

Plaintiff as counsel for the Classes;

      D.      Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.


PLAINTIFF,
By his attorney

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com